# Exhibit B

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N :-

CANFORNAV INC.

Claimants
(Owners)

- and –

SADOT LATAM LLC

Respondents
(Charterers)

"CHESTNUT"

Charterparty dated 15th September 2023

FINAL ARBITRATION AWARD

W H E R E A S:-

1. By a contract contained in and evidenced by a recapitulation email dated 15th September 2023 for a charterparty on a Norgrain form, the Claimants (hereinafter

referred to as "the Owners") agreed to charter a vessel to be nominated to the Respondents (hereinafter referred to as "the Charterers") to carry a cargo of 20,000 metric tons 10% more or less in Owners' option of bulk corn from Toledo, Ohio to Barranquilla, Columbia. In the event the "CHESTNUT" was nominated to perform the charterparty voyage.

2. The said charterparty provided, inter alia, that it was to be construed in accordance with English law and any disputes were to be referred to arbitration in London and *"the LMAA rules"* were to apply. That was obviously a reference to the LMAA Terms.

3. Disputes arose between the parties as detailed hereafter. The Owners appointed me, Mark Hamsher now of 11 King Henry's Road, London NW3 3QP, as the arbitrator nominated by them.

4. The Owners advised the Charterers of my appointment by an email dated 11th January 2024 via the brokers, the Latin American Team of MID-SHIP Group LLC. The Owners called upon the Charterers to appoint their own arbitrator.

5. The Owners subsequently appointed the London solicitors, Rosling King LLP, to represent them in these arbitration proceedings. On 31st January 2024 Rosling King sent a further message to the Charterers through the brokers. They asked the Charterers to treat the message as further notice of the Owners' decision to refer the dispute to arbitration and of my appointment as the arbitrator. The email concluded: *"We require Charterers to now appoint its own arbitrator within 14 calendar days but give notice that we will appoint Mr Hamsher as sole arbitrator unless Charterers appoint their own arbitrator and gives notice to us that it has done so within the 14 days specified."*

6. On 4th March 2024 Rosling King advised me that the Charterers had failed to appoint an arbitrator and, in accordance with clause 10 of the LMAA Terms, I had been appointed as sole arbitrator.

7. On 5th March 2024 I sent the following email to the Charterers via the brokers:-

> *"I refer to the email of 31st January sent to you by Rosling King.*
>
> *They have advised me that you have not appointed an arbitrator of your own and they have asked me to accept appointment as sole arbitrator.*
>
> *Please note that having satisfied myself that this reference is governed by the LMAA Terms and that proper notices advising you of my appointment and giving you an opportunity to appoint an arbitrator were served, I have today accepted appointment as sole arbitrator in respect of all disputes arising under the above charterparty.*
>
> *It goes without saying that although initially I was appointed by only one party, I shall of course throughout the reference act with the same impartiality as if I had initially been appointed as sole arbitrator by both parties.*
>
> *I look forward to hearing further from the parties in due course.*
>
> *If Midship would like to drop out of this correspondence, I would be happy to deal directly with Sadot Latman LLC if I could be provided with an appropriate email address or addresses."*

8. On the same day the brokers confirmed to me that the message had been forwarded to the Charterers and they also advised that they had asked them to confirm if they would prefer to handle the matter with the Owners/attorneys directly. No objection to my acting as sole arbitrator was taken at that time or at any time prior to the publication of this award.

9. The Owners claimed US$56,293.89 on the balance of accounts under the charterparty, principally in respect of demurrage, together with interest and costs.

10. Following the move of the case-handler from Rosling King to Hannaford Turner LLP, claim submissions on behalf the Owners were served by Hannaford Turner on 24th April 2024 together with supporting documentation. On the same day the brokers confirmed that they had been forwarded to the Charterers.

11. On 1st May 2024 I sent the following email to the Charterers through the brokers, who again forwarded it to the Charterers on the same day:-

    "I refer to the claim submissions forwarded to you by Midship Group on 24th April.

    I just wanted to explain that 28 days for service of defence submissions is the normal period allowed in London arbitration for service of those submissions. In the event of your encountering real difficulties in complying with that time limit, there is liberty to apply for an extension of it. Having said which, at least on the basis of the claim submissions, this would appear to be a reference in which there should be no difficulty in complying with the standard 28 day time limit."

12. On 3rd June 2024 Hannaford Turner sent the following email to me with a copy to the Charterers via the brokers:-

    "We refer to the tribunal's below message.

    The time for service of a defence has long passed and no defence has been received nor has any request for a time extension been served. We accordingly seek a final order from the tribunal requiring Charterers to serve their defence submissions within 7 days failing which the tribunal should proceed to an award on the basis of the documents before it."

    Again, the brokers helpfully confirmed that it had been forwarded to the Charterers.

13. On 3rd June 2024 I sent the following email to the Charterers via brokers:-

> *"I refer to the email of this morning from Hannaford Turner forwarded to you this afternoon by Mid-ship Group LLC.*
>
> *In the absence of any defence submissions or a request for an extension of the time limit within which to serve defence submissions, I hereby make a final and peremptory order for service of the defence submissions on or by close of business in London on Tuesday 11th June. To avoid any misunderstandings, I must make it clear that in the event of defence submissions not being served within the time limit that I have now laid down, then I shall proceed to my award on the basis of the documents then before me, to the exclusion of any documents or submissions served after expiry of the time limit. Naturally I hope that it will not come to that and that you will still serve defence submissions within the time limit."*

Again, the brokers confirmed on the same day that my message had been forwarded to the Charterers.

14. Unfortunately, no submissions were received from or on behalf of the Charterers prior to the publication of this award. However, I was satisfied that they had been given every reasonable opportunity of serving defence submissions and I could properly proceed to my award in the absence of any defence submissions. The absence of any defence submissions meant that it was appropriate that I should scrutinise the Owners' claim particularly closely and I did so.

15. The recapitulation email provided in part:-

> *"7. TERMS: 3 WWD (weather working days) OF 24 CONSECUTIVE HOURS SSHEX EIU (FRIDAY 5PM-MONDAY 0800 HRS, HOLIDAYS EXCLUDED EIU) LOAD*

6,000 MT PWWD OF 24 CONSECUTIVE HOURS SATURDAYS, SUNDAYS AND HOLIDAYS INCLUDED, EXCLUDING SUPER HOLIDAYS DISCHARGING

AT LOAD PORT, TIME FROM FRIDAY 1700HRS OR ON DAYS BEFORE HOLIDAYS UNTIL 0800HRS MONDAY (OR 0800HRS ON NEXT WORKING DAY FOLLOWING A HOLIDAYS) NOT TO COUNT EVEN IF USED

AT LOAD, TIME TO COUNT 0800HRS NEXT WORKING DAY AFTER PRESENTATION OF VALID NOTICE OF READINESS AND VESSEL HAVING BEEN DULY FILED WITH LOADING TERMINAL/ELEVATOR DURING ORDINARY OFFICE HOURS, I/E 09:00 - 16:00 MONDAY TO FRIDAY AND 09:00 -12:00 SATURDAY, WIBON / WIPON / WICCON. NOR MUST BE PRESENTED ACCOMPANIED WITH NCB /USDA OR EQUIVALENT PASSES IN ORDER TO BE VALID FOR ARRIVAL PURPOSES AND FOR LAYTIME COUNTING

AT DISCH, NOR ACCEPTED AND VALIDATED ONLY WHEN TENDERED AND RECEIVED AT THE OFFICE OF THE CHARTERERS OR THEIR MONDAY THROUGH SUNDAYS 0800 TO 1700HRS. TIME TO COUNT 0800HRS NEXT WORKING DAY AFTER ACCEPTANCE OF SUCH NOR, WITHIN OFFICE HOURS SHINC.

shinc tendering at disch port and time to start counting 12 hrs after NOR Tendered unless sonner commenced.

AT BOTH LOAD AND DISCHARGE, IN CASE VSL IS UNABLE TO PROCEED TO BERTH ON ACCOUNT OF CONGESTION THE VESSEL SHALL BE PERMITTED TO PRESENT NOR FROM THE CUSTOMARY ANCHORAGE WHETHER IN PORT OR NOT, WHETHER IN BERTH OR

> *NOT, WHETHER IN FREE PRATIQUE OR NOT, WHETHER CUSTOM CLEARED OR NOT, WHETHER IN BERTH OR NOT, WHETHER INSPECTED OR NOT.*
>
> *11. dem/des: usd 16,500 pdpr dhdls bends, Dockages after laytime expires to be for shipprs or chrtrs account."*

16. As has already been recited, the Charterers did not serve any defence submissions. Very properly Hannaford Turner included in the attachments to the claim submissions the laytime calculations that the Owners had received from the Charterers.

17. The Owners' and Charterers' laytime calculations revealed differences as to how they had calculated laytime/demurrage at the loading port of Toledo and one of the discharging ports, Rio Haina.

18. The Owners calculated that demurrage of US$97,017.71 had accrued at Toledo. The Charterers calculated that only demurrage of US$46,543.75 had accrued at that port. The difference was attributable to the fact that the Charterers had only counted time from 0800 hours on 23rd October to 0700 hours on 30th October at a 50% rate.

19. It is, of course, for the Charterers to establish why laytime should not run and/or demurrage should not accrue at a 100% rate and they had chosen not to serve any submissions justifying their calculations. Very fairly, Hannaford Turner mentioned that in exchanges between the parties, the Charterers had purported to rely on clause 71 of the charterparty. However, clause 71 dealt exclusively with the effect of strikes at a port of discharge; it had no bearing on the effect of strikes at the port of loading. Once the vessel came on demurrage at the port of loading, the Owners correctly calculated that demurrage accrued at 100% rate except that they suspended the accrual of demurrage while the vessel shifted and while a draft check was carried out. I was satisfied that the Owners' calculation was correctly carried out in accordance with the provisions of the charterparty and the

documentary evidence. I was therefore satisfied that the Owners' claim for load port demurrage of US$97,017.71 was correctly calculated.

20. At Rio Haina the Owners calculated that laytime started running at 1835 hours on 13th November 2023, which was when discharging commenced. They calculated that the vessel was on demurrage for 11 hours and 58 minutes, giving rise to a demurrage claim of US$8,227.08. The Charterers' laytime calculation, however, showed that they had only counted time from 0800 hours on 14th November 2023 which meant that despatch in the amount of US$497.65 had accrued. However, as was validly pointed out on behalf of the Owners, the Charterers' calculation overlooked the provision in clause 7 of the recapitulation email (quoted in paragraph 15 above) which read: "*shinc tendering at disch port and time to start counting 12 hrs after NOR Tendered unless sonner commenced*". I was therefore satisfied that the Owners' calculation was correct and they were entitled to demurrage of US$8,227.08 for the discharge port of Rio Haina.

21. I therefore concluded that the Owners' claim on the balance of accounts in the amount of US$56,293.89 was correctly calculated. It followed that the Owners' claim on the balance of accounts succeeded in full.

22. Although clearly there were differences between the parties as to the correct figures on the final balance of accounts on 10th January 2024 when the Owners appointed me as the arbitrator nominated by them, the invoice setting out the Owners' calculations on the final balance of accounts giving rise to their claim for US$56,293.89 was only dated 5th March 2024. Although it is normal to allow a period for the checking and settlement of accounts before interest accrues, given that the accounting had clearly been under discussion between the parties, I concluded that it was appropriate to award interest from 5th March 2024.

23. Since the Owners had been entirely successful, it was appropriate that they should be entitled to recover their costs as well as the costs of my award if they should have borne them in the first instance.

24. NOW I the said Mark Hamsher, having taken upon myself the burden of this reference, having carefully and conscientiously considered the written evidence and arguments submitted to me, DO HEREBY MAKE, ISSUE AND PUBLISH this my FINAL AWARD as follows:-

A) I FIND that the Owners' claim in the amount of US$56,293.89 succeeds in full.

B) I THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners US$56,293.89 (fifty-six thousand, two hundred and ninety-three United States dollars and eighty-nine cents) together with compound interest thereon at the rate of 5.5% per annum compounded at three monthly rests from 5th March 2024 until the date of payment.

C) I FURTHER AWARD AND ADJUDGE that the Charterers shall bear their own and the Owners' costs of the reference, the latter, if not agreed, to be assessed by me in award of costs, I hereby reserving my jurisdiction as necessary.

D) I FURTHER AWARD AND ADJUDGE that the Charterers shall bear the costs of this my final award in the amount of £4,000.00 PROVIDED that if, in the first instance, the Owners shall have borne any part of the said costs of this my final award, they shall be entitled to immediate reimbursement by the Charterers of the sum so paid.

E) I FURTHER AWARD AND ADJUDGE that the Owners shall be entitled to compound interest at the rate of 5.5% per annum compounded at three monthly rests on any sums payable to them under paragraphs C and D above from the date of this award until the date of payment in respect of sums due under paragraph C and from the date of payment until the date of reimbursement in respect of sums due under paragraph D.

- 10 -

GIVEN under my hand in London this  17th  day of  June  2024

*[signature]*

Sole Arbitrator